IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SAR PALA RA ANAN aka
MARVELLOUS A. GREENE, SR.

       Plaintiff,                No. CIV S- 02-0493 DFL GGH P

   vs.

D. KIMBRELL, et al.,            FINDINGS AND RECOMMENDATIONS

       Defendants.

_____/

<u>Introduction</u>

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.  The only remaining issue for trial is plaintiff's claim for money damages for a First Amendment violation by defendants Pliler and Bolin in rejecting and returning plaintiff's chess book which had been mailed to him in June of 2001.

In an amended pretrial order,[1] filed on November 8, 2005, which followed the parties' unsuccessful efforts to settle this matter, the court determined, inter alia, that further briefing was necessary on the issue of whether plaintiff is entitled to punitive damages. Amended Pretrial Order (APO), p. 2.  Plaintiff was granted thirty days to file and serve a

_____

[1] The original pretrial order was filed on July 21, 2005.

memorandum of points and authorities in support of his claim for punitive damages, after which

defendants were granted twenty days to file an opposition.  The matter, thereafter, was to be

deemed submitted.  The court cautioned that there would be no extension of time absent

extraordinary circumstances, in light of the trial date, which at that time had been re-set for

February 6, 2006.   The trial in this matter has subsequently been re-set twice, with the jury trial

now set before the Honorable David F. Levi in Courtroom 7 on May 15, 2006 at 9:00 a.m.[2]

Plaintiff filed a declaration on December 6, 2005, another on December 13, 2005,

a memorandum of points and authorities on December 16, 2005, and another memorandum of

points and authorities in support of his punitive damages claim on December 21, 2005.[3]

Although plaintiff's two memoranda were filed beyond the deadline and no request for extension

of time was sought by plaintiff (stating any cause, much less extraordinary cause), the court will

deem the filings timely.  Defendants filed their opposition to the memorandum in support of

plaintiff's punitive damages claim timely.  In fact, their opposition, on December 21, 2005,

preceded the filing in the docket of plaintiff's later memorandum.  Plaintiff's January 3, 2006[4]

"opposition to defendants' opposition...." will be disregarded because the briefing schedule only

called for one brief from plaintiff and an opposition by defendants.[5]

The legal standard for summary judgment has previously been set forth in this

case and will not be reiterated here.  See (Order) &  Findings and Recommendations, filed on

---

[2] See Minute Orders, filed on January 4, 2006 and January 19, 2006, docket entry nos. 93 and 96.

[3] Application of the mailbox rule indicates these filings were made on November 29, 2005, December 8, 2005, December 13, 2005 and December 14, 2005,  respectively.

[4] Per the mailbox rule, filed on December 29, 2005.

[5] In this inapposite January 3, 2006 filing, plaintiff asserts, inter alia, that he is willing to settle and voluntarily dismiss this case if he is allowed a chess set, an item no longer at issue herein.   In any event, the parties have already been provided an appropriate opportunity to settle this matter before another magistrate judge.  The briefing required by this court does not touch on any settlement negotiation in which the parties may wish to engage.

1   January 14, 2004, pp. 3-5, adopted by <u>Order</u>, filed on March 31, 2005.  <u>See also</u>, <u>Cool Fuel v.</u>

2   <u>Connett</u>, 685 F.2d 309, 311-312 (9th Cir. 1982) (court may sua sponte grant summary judgment

3   to non-moving party if there is no genuine dispute with respect to a material fact essential to

4   proof of movant's case, so long as party against whom summary judgment is rendered had "a full

5   and fair opportunity to ventilate the issues involved in the motion.")   In this case, the court

6   sought further briefing sua sponte on the issue of punitive damages, as noted above, and the

7   parties have been granted a full and fair opportunity to submit their arguments.

8   <u>Plaintiff's Filings</u>

9          Plaintiff's December 6, 2005 declaration is a rather astonishing document wherein

10  plaintiff, under penalty of perjury, sets forth that in 2002, while housed in New Folsom State

11  Prison (or CSP[6]-Sacramento), he "ran a covert chess match with 15 other prisoners."  He goes on

12  to state that the "buy in was $740.00 in stamps or money order[sic] or canteen"; that "the purse

13  was $5,180.00."  The rules of the game were "winner takes all; no points for second place."  An

14  inmate named Rex Chappel won, beating plaintiff out in five games with three wins, one loss,

15  one draw.  Plaintiff's declaration, filed on December 6, 2005.

16         The court is apparently meant to infer, because plaintiff makes no further

17  explanation in this declaration, that plaintiff seeks to predicate his claim for punitive damages in

18  this action on his failure to receive the chess book at issue because, presumably, defendants'

19  actions concerning a chess book he did not receive resulted in his loss of several thousand dollars

20  in stamps, canteen goods and/or money in a "covert," not to say illegal and wholly unauthorized,

21  prison chess gambling tournament he arranged.  Needless to say, plaintiff's showing does not

22  militate for a finding by this court in his favor on a claim of punitive damages based on these

23  facts.

24  \\\\\

25  _____

26         [6] California State Prison.

1    In his second declaration, plaintiff, inter alia,[7] represents that while he was housed

2  at High Desert State Prison he ran a chess tournament in Buildings 5 and 6.  December 13, 2005

3  declaration, p. 5.  He includes, as Exhibit A, hand drawn diagram which sets forth pairs of

4  inmates "5 block" and "6 block," although no facility is identified thereon.  Plaintiff appears to

5  be attempting to indicate that certain of the inmates make up the "final 4," although no dates or

6  further information is provided (or properly authenticated).  In Exhibit B to his declaration,

7  plaintiff submits his handwritten D-yard "Chess Tournament By-Laws."  He does not indicate

8  thereon where and when these "by-laws" applied, whether they were endorsed by prison officials,

9  or any other pertinent information.  In his declaration, plaintiff appears to be connecting the

10  exhibits to a chess tournament he ran on unidentified dates at High Desert.  In any case, plaintiff

11  does not make clear how this sanctioned or unsanctioned putative chess tournament supports in

12  any way his claim for punitive damages herein.

13    In his December 16, 2005 memorandum of points and authorities, plaintiff alleges

14  that defendant Bolin was the mail room supervisor who sent back plaintiff's chess book[8] and that

15  defendant Pliler was responsible for creating or endorsing a policy of "illegal acts," as well as

16  "grossly negligent" in her supervisorial duties.  Plaintiff cites, inter alia, <u>Smith v. Wade</u>, 461

17  U.S. 30, 55, 103 S. Ct. 1625, 1639 n. 21 (1983), in support of his claim for punitive damages.  In

18  that case, in footnote 21, the Supreme Court quoted <u>Carlson v. Green</u>, 446 U.S. 14, 100 S. Ct.

19  \\\\\

20  \\\\\

21  _____

22  [7] Plaintiff also states that he has some missing legal papers and is not able to file the
interrogatory responses he intended to use at trial and intends to file a whole new set of exhibit

23  items as well as an exhibit from another case to show chess matches "orchestrated" at High
Desert State Prison.  December 13, 2005 declaration, p. 2.  Exhibits of the parties were set forth

24  in the amended pretrial order.  Plaintiff will have to make an in limine motion before the trial
judge for admission of any alternate exhibits.

25  [8] Plaintiff continues to raises claims that have been dismissed in his references to a chess
set and also apparently seeks to revive claims against a defendant (Kimbrell) who is no longer a

26  defendant in this action.

1   1468 n. 9  (1980), noting that after <u>Carey v. Piphus</u>,[9] "punitive damages may be the only

2   significant remedy available in some § 1983 actions where constitutional rights are maliciously

3   violated but the victim cannot prove compensable injury."

4              In his December 21, 2005 memorandum, plaintiff revisits the 2002 tournament he

5   claims to have orchestrated, stating for the first time explicitly that he would have won the

6   $5,180.00 had he had chess book(s) he had ordered.[10]  December 21, 2005 memorandum, p. 1.

7   He tempers this claim somewhat near the end of his brief, stating that had he had his chess books

8   and a larger chess set, he "could have at least [given] Rex Chappel better games, and at best [he]

9   would have won the chess tournament." <u>Id</u>., p. 4.  Plaintiff also cites, inter alia, the case of

10  <u>Cannell v. Lightner</u>, 143 F.3d 1210, 1213 & n. 3 (9th Cir. 1998) for the proposition that "the

11  deprivation of First Amendment rights entitles a plaintiff to judicial relief wholly aside from any

12  physical injury he can show, or any mental or emotional injury he may have incurred."   The

13  court notes, however, that this statement was made in the context of finding inapplicable 42

14  U.S.C. 1997e(e)[11] to a First Amendment claim for which injunctive relief, not money damages,

15  could be available.

16  <u>Defendants' Opposition</u>

17             Defendants aver that plaintiff is alleging now that defendant Bolin, the mailroom

18  supervisor, returned his chess book personally and that defendant Pliler "'created a policy or

19  custom of allowing or encouraging the illegal acts,'" without pointing to any evidence in support

20  thereof.  Opposition (Opp.), p. 2, citing plaintiff's December 16, 2005 memorandum.  Plaintiff

21

22       [9] In <u>Carey v. Piphus</u>, 435 U.S. 247, 257 n. 11, 98 S. Ct. 1042, 1049 n. 11 (1978),  the
    Supreme Court noted that punitive damages may be available "in a proper case under § 1983."

23       [10] Plaintiff also mentions that his loss may have also been due in part to not having
24  received a bigger chess board; however, his claim with respect to the chess board is no longer at
    issue herein.

25       [11] "No federal civil action may be brought by a prisoner confined in a jail, prison, or other
26  correctional facility, for mental or emotional injury suffered while in custody without a prior
    showing of physical injury."

1   also claims that defendant Pliler was negligent is supervising subordinates.  Id.  None of these

2   claims support an award of punitive damages, according to defendants.  Id.

3        Defendants also reference Smith v. Wade, supra.  Opp., p. 2.  The Supreme Court

4   therein held that punitive damages may be assessed by a jury under 42 U.S.C. § 1983, "when the

5   defendant's conduct is shown to be motivated by evil motive or intent, or when it involves

6   reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, at 56,

7   103 S. Ct. at 1640.  Id.

8        As also observed by defendants, the Ninth Circuit has recently determined that

9   conduct on the part of defendants that is oppressive can provide a basis for a punitive damages

10  award.  Opp., p. 2, citing Dang v. Cross, 422 F.3d 800, 806 (9th Cir. 2005).  The current Ninth

11  Circuit Model Civil Jury Instruction § 7.5, addressing the issue of punitive damages in federal

12  civil references, inter alia, oppressive conduct.[12]

13          If you find for the plaintiff, you may, but are not required to, award
14          punitive damages.  The purposes of punitive damages are not to
            compensate the plaintiff, but to punish a defendant and to deter a
            defendant and others from committing similar acts in the future.
15
16          The plaintiff has the burden of proving that punitive damages
            should be awarded, and the amount, by a preponderance of the
17          evidence. You may award punitive damages only if you find that
            defendant's conduct was malicious, oppressive or in reckless
18          disregard of the plaintiff's rights. Conduct is malicious if it is
            accompanied by ill will, or spite, or if it is for the purpose of
19          injuring another. Conduct is in reckless disregard of the plaintiff's
            rights if, under the circumstances, it reflects complete indifference

20

21          [12] "If you find for the plaintiff, you may, but are not required to, award punitive damages.
    The purposes of punitive damages are to punish a defendant and to deter a defendant and others
22  from committing similar acts in the future.  The plaintiff has the burden of proving that punitive
    damages should be awarded, and the amount, by a preponderance of the evidence. *You may*
23  *award punitive damages only if you find that defendant's conduct was malicious, or in reckless*
    *disregard of the plaintiff's rights.*  Conduct is malicious if it is accompanied by ill will, or spite,
24  or if it is for the purpose of injuring another.  Conduct is in reckless disregard of the plaintiff's
    rights if, under the circumstances, it reflects complete indifference to the plaintiff's safety, rights,
25  or the defendant acts in the face of a perceived risk that its actions will violate the plaintiff's
    rights under federal law.  Model Civ. Jury Instr. 9th Cir. 7.5 (2004) (emphasis added)."  Dang v.
26  Cross, 422 F.3d at 807.  This instruction was found to be an "incomplete" presentation of the law
    with regard to punitive damages.  Id.

1  to the plaintiff's safety and rights, or the defendant acts in the face
   of a perceived risk that its actions will violate the plaintiff's rights
2  under federal law. An act or omission is oppressive if the person
   who performs or fails to perform it injures or damages or otherwise
3  violates the rights of the plaintiff with unnecessary harshness or
   severity, such as by the misuse or abuse of authority or power or by
4  the taking advantage of some weakness or disability or misfortune
   of the plaintiff.
5  ......................................................................................................

6  Model Civ. Jury Instr. 9th Cir. 7.5 (2005), in relevant part.

7          Quoting this instruction, defendants maintain that plaintiff has failed to allege

8  facts to support a punitive damages award, contending that plaintiff's amended complaint states

9  that defendants did not provide a prompt written statement explaining why his chess book was

10 rejected by the mail room and that returning the chess book was outside the specified criteria for

11 rejection of incoming publications.  Opp., p. 3.  Defendants aver that the allegations center on the

12 failure of defendants to provide timely reasons that his book was returned and do not even claim

13 that defendants caused the book to be returned or that defendants' conduct was malicious,

14 oppressive or in reckless disregard of plaintiff's rights.[13]  Id.  Defendants argue that plaintiff's

15 allegations do not approach the standard set forth for a punitive damages award set forth in Smith

16 v. Wade, supra.  Id.

17 Discussion

18         Defendants are correct that within his amended complaint, plaintiff's allegations

19 with regard to defendant Bolin are focused on that individual's alleged failure to provide plaintiff

20 with notice of the rejection and return of plaintiff's chess book(s) in June of 2001.  See Amended

21 Complaint.  As to defendant Pliler, plaintiff also complains of her failure to provide notice about

22 the return of his chess book.  Implicitly at least, plaintiff also contends that his First Amendment

23

24         [13] Defendants go on to contend that because plaintiff was credited with the cost of the
   chess book (by the U.S. Chess Federation), he cannot even show actual injury to support an
25 award of compensatory damages.  However, the court does not reach this question of whether
   plaintiff may, if successful, be entitled only to nominal damages; the parties were only asked to
26 brief the question of plaintiff's entitlement to punitive damages.

1   rights were also violated by the defendants' failure to implement constitutional mail room

2   policies.  See Order & Findings and Recommendations, p. 5, filed on January 14, 2005, adopted

3   by Order filed on March 31, 2005.

4            Plaintiff has not produced adequate evidence to support a claim for punitive

5   damages.  Although defendants do not refer to it, plaintiff's claim of injury in the form of a lost

6   opportunity to fully compete for and win a self-described illicit "covert" chess match is patently

7   absurd at best.  It remains to be seen if plaintiff can prevail before a jury on his claims of a

8   violation of his First Amendment rights against the defendants.  Should he do so, however, this

9   court finds that he has set forth wholly insufficient claims to support an award for punitive

10   damages.  Assuming that plaintiff is able to prove on these facts a violation of his constitutional

11   rights, he does not state a claim as a matter of law with respect to entitlement to punitive

12   damages.

13            In Larez v. City of Los Angeles, 946 F.2d 630, 639 (9th Cir. 1991), the Ninth

14   Circuit found that punitive damages could be awarded where defendant police officers in a civil

15   rights trial were found to have used excessive force in conducting a search.  The defendants'

16   argument on appeal that due process was violated because the punitive damages award was

17   imposed on a lesser standard than actual malice was not considered because defendants had not

18   objected to the punitive damages instruction in the trial court.  Larez , supra, 946 F.2d at 639.

19   Nevertheless, on the merits, citing Smith v. Wade, 461 U.S. at 56, 103 S. Ct. at 1640, the court

20   indicated that defendants were mistaken because actual intent or malice is not required, so long

21   as the conduct at issue involves "'reckless on callous indifference to the federally protected rights

22   of others.'"  Also, as noted, in the Ninth Circuit case cited by defendants, it was found that a jury

23   instruction which allows for punitive damages to be imposed for conduct that is oppressive and

24   which caused plaintiff's injury was fully adequate.  Dang v. Cross, 422 F.3d at 808.

25            Notwithstanding that the standard for fixing damages for the violation of a

26   federally protected right remains a rather amorphous one, it surely requires, to justify seeking

8

1   punitive damages, a showing of recklessness or callous indifference far beyond that which

2   plaintiff has alleged.  To find otherwise would signify that the finding of any violation of a

3   constitutional right in a § 1983 action could warrant an award of punitive damages.

4          Based on the evidence, or lack thereof, that plaintiff has presented herein, he has a

5   hurdle to show any injury herein; however, should he prevail on his claims before a jury, he

6   should be precluded from seeking punitive damages.  No reasonable juror could fix an award of

7   punitive damages if presented with these allegations, even if a jury finds the allegations proven as

8   fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 2512 (1986)

9   (defendant entitled to summary judgment if the evidence on which a jury could reasonably rely is

10  insufficient to find for plaintiff).   The parties having been granted a full and fair opportunity to

11  submit their arguments, the court sua sponte will recommend summary judgment be entered for

12  defendants with respect to plaintiff's claim for punitive damages and that this matter proceed to

13  trial against defendants only on plaintiff's claim for compensatory and/or nominal damages.

14  Cool Fuel v. Connett, 685 F.2d at 311-312 (9th Cir. 1982).

15         Accordingly, IT IS HEREBY RECOMMENDED that summary judgment be

16  entered for defendants on plaintiff's claim for punitive damages and this case proceed to trial

17  against defendants only on plaintiff's claim for compensatory and/or nominal damages.

18         These findings and recommendations are submitted to the United States District

19  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

20  days after being served with these findings and recommendations, any party may file written

21  objections with the court and serve a copy on all parties.  Such a document should be captioned

22  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

23  shall be served and filed within ten days after service of the objections.  The parties are advised

24  \\\\\

25  \\\\\

26  \\\\\

1  that failure to file objections within the specified time may waive the right to appeal the District

2  Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

3  DATED:    3/6/06

4                                                          /s/ Gregory G. Hollows

5                                                          GREGORY G. HOLLOWS
                                                           UNITED STATES MAGISTRATE JUDGE
6

7  GGH:009
   rana0493.fr
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26